**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Randall Lewis CROWDER,
Defendant-Appellant.**

No. 81–5186.

United States Court of Appeals,
Sixth Circuit.

Argued March 3, 1982.

Decided Oct. 21, 1982.

Opinion on Granting of Rehearing En Banc Feb. 16, 1983.

Thomas L. Osborne, court-appointed, Osborne, Deatherage & Fletcher, Paducah, Ky., for defendant-appellant.

Alexander P. Taft, U. S. Atty., Alan E. Sears, Asst. U. S. Atty., Louisville, Ky., for plaintiff-appellee.

Before EDWARDS, Chief Judge, PECK, Senior Circuit Judge, and CHURCHILL,* District Judge.

---

\* Honorable James P. Churchill, United States District Judge for the Eastern District of Michi-

CHURCHILL, District Judge.

On March 10, 1981, Randall Lewis Crowder was convicted, after a trial by jury in the Western District of Kentucky, of two counts of knowingly transporting a stolen motor vehicle in interstate commerce in violation of 18 U.S.C. § 2312 and of two counts of receiving, concealing, and storing a stolen motor vehicle in violation of 18 U.S.C. § 2313. Upon appeal he raises several issues alleging reversible error, one of which is dispositive and requires a remand for a new trial.

Crowder was initially questioned by Kentucky State Police at the scene where the vehicles were recovered. The matter was then referred to the Federal Bureau of Investigation. Special Agent Seldon Sledd conducted the government's investigation.

Six months after the initial questioning, Crowder received a call from Special Agent Sledd. Sledd informed him that an arrest warrant had been issued and that he should come to Hopkinsville and prepare to be arrested. After calling his attorney, Crowder surrendered voluntarily and was read his *Miranda* rights.

The major point that emerged from Special Agent Sledd's testimony at trial was the fact that Crowder was asked whether he wished to make a statement after being read his rights.

Q. Did he indicate to you—What did he say to you?

A. After being advised of his rights, he stated that he did not wish to discuss these charges, that he wished to stand by the statement he had made to the State Police.

Tr. 319.

Immediately prior to the above-quoted testimony, defense counsel had objected and moved for a mistrial:

Q. Did he state that he understood the constitutional rights?

A. Yes he did.

MR. OSBORNE: May we approach the bench.

gan, sitting by designation.

BY THE COURT: Yes.

(At bench out of the hearing of the jury.)

MR. OSBORNE. I don't believe this trick.

MR. GILLENWATER. This what?

MR. OSBORNE: This trick—t-r-i-c-k. This man took the fifth and declined to give a statement.

BY THE COURT. What are you objecting to?

MR. OSBORNE. He advised the man of his constitutional rights and he was not willing to give a statement. He said he didn't want to, and he didn't have to.

BY THE COURT: Mr. Witness.

(Witness at bench out of hearing of the jury.)

BY THE COURT. Did the defendant make a statement to you after you advised him of his rights?

THE WITNESS. No, sir. He said he didn't want to, and he didn't have to.

MR. GILLENWATER. Could I refresh his memory? He said that he would stand by the statement he made to the police.

MR. GILLENWATER. That is his statement.

BY THE COURT: All right. I will let him answer about that.

MR. OSBORNE. Your honor, to allow into evidence the admission of an accused person to refuse a statement after he has been advised of his rights is in violence, in my opinion, of the fifth amendment to the United States Constitution, and I move for a mistrial.

BY THE COURT. Well, if he had refused, this evidence wouldn't have been competent, but he didn't. He said he would stand by his statement to the police.

Tr. 317–19.

Crowder's purported "statement" was again raised before the jury during his cross-examination by the prosecutor:

Q. Do you recall being interviewed by Agent Sledd on December 9, 1980?

A. Yes, I do.

Q. Well, did you make this statement to him? "I do not wish to discuss the matter and will stand by my previous statements to the Kentucky State Police"?

A. Yes, I did.

BY THE COURT: He had the perfect right to make that statement, ladies and gentlemen, and that is not to be considered as evidence of his guilt.

A. I made that statement, if I may say so, on the advice of a previous lawyer that I had had.

Q. Your lawyer told you to make that statement?

A. That is correct.

BY THE COURT. He didn't have to make any statement.

A. (Continuing) Not this lawyer.

Tr. 429.

In the ensuing side-bar conference, defense counsel again moved for mistrial, contending that the cautionary instruction did not cure his Fifth Amendment objection. The motion was overruled by the Court.

There were thus two separate instances at trial where the jury was informed that Crowder had refused to talk to the FBI at the time of his arrest. Objection was timely raised on both occasions. The controlling inquiry in the first instance is whether Crowder voluntarily waived his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966). In the second instance the inquiry is whether his rights under *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), were violated.

■ Under *Miranda, supra,* the prosecution must demonstrate that the familiar warnings were given and that waiver of such protection was made, before interrogation evidence may be used at trial. Waiver, in this context, is the "intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 146 A.L.R. 357 (1938). *See also Maglio v. Jago*, 580 F.2d 202, 204–05 (6th Cir. 1978).

■ The question, therefore, is whether Crowder's statement to Agent Sledd constituted a voluntary statement, made in intentional relinquishment or abandonment of his *Miranda* rights or, alternatively, was merely an exercise of his right to remain silent. While Crowder asserted his rights inartfully, it was nonetheless apparent that Sledd construed the "statement" to be Crowder's assertion, and not abandonment, of his rights. Valuable rights are not lost through their inartful assertion by the de-

tained individual, particularly where the detaining authority is aware that the rights have been asserted. *Cf. Maglio, supra,* at 205 (right to counsel). Direct use of Crowder's silence, during the prosecution's case-in-chief, was therefore improper and constituted a violation of *Miranda's* "implicit assurance that silence will carry no penalty ...." *United States v. Williams,* 665 F.2d 107, 110 (6th Cir. 1981), *citing Doyle v. Ohio,* 426 U.S. 610, 617–18, 96 S.Ct. 2240, 2244, 49 L.Ed.2d 91, 97–98 (1976). *See also Miranda, supra,* 384 U.S. at 468 n. 37, 86 S.Ct. at 1624–25 n. 37, 16 L.Ed.2d 720 n. 37, 10 A.L.R.3d at 1007–08 n. 37.

■ Similarly, it was improper for the prosecutor to cross-examine Crowder regarding his silence. In *Williams, supra,* this Court noted that "it is fundamentally unfair, except in special circumstances ... to cross-examine a defendant about post-*Miranda* silence ...." 665 F.2d at 110. Here, as in *Williams,* none of the special circumstances are applicable. We are unable to say that these errors were harmless beyond a reasonable doubt.

The judgment of the district court is vacated, and the case is remanded.

GEORGE CLIFTON EDWARDS, Jr., Chief Judge, dissenting.

I respectfully dissent, believing that the majority decision is precluded by the United States Supreme Court's opinion in *Anderson v. Charles,* 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980).

## ORDER

A majority of the Judges of this Court in regular service have voted for rehearing of this case en banc. Sixth Circuit Rule 14 provides as follows:

The effect of the granting of a hearing en banc shall be to vacate the previous opinion and judgment of this Court, to stay the mandate and to restore the case on the docket as a pending appeal.

Accordingly, it is ORDERED that the previous decision and judgment of this Court is vacated, the mandate is stayed and this case is restored to the docket as a pending appeal.