## State of Vermont v. William Mosher

[465 A.2d 261]

No. 288-81

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed June 7, 1983

198

200

*John A. Rocray,* Windham County State's Attorney, and *William E. Kraham,* Deputy State's Attorney, Brattleboro, for Plaintiff-Appellee.

*Andrew B. Crane,* Defender General, *William A. Nelson,* Appellate Defender, and *Nancy E. Kaufman,* Montpelier, for Defendant-Appellant.

Gibson, J. Defendant was convicted after trial by jury of counseling burning to defraud an insurer, in violation of 13 V.S.A. § 506. He submits three issues on appeal: (1) that the trial court lacked jurisdiction, (2) that the trial court committed plain error in its jury charge, and (3) that the State violated defendant's rights against self-incrimination and to due process by introducing evidence of defendant's silence prior to his arrest, but following receipt of *Miranda* warnings and his execution of a waiver. We shall consider these issues in order.

In evaluating defendant's claims, we must view the evidence in the light most favorable to the State as the prevailing party below. *State* v. *Billado,* 141 Vt. 175, 189, 446 A.2d 778, 786 (1982). Thus considered, the evidence disclosed that in October of 1979 defendant was alleged to have arranged for two accomplices to take his 1975 Ford Pinto "and either smash it or burn it" in return for $150 or $200 from the insurance proceeds. The accomplices in turn approached a third person, who agreed to dispose of the car. However, his efforts were ill-starred, and ultimately, the two accomplices managed to take the car from defendant's workplace in Vermont and drive it to a secluded road which defendant had located in nearby New Hampshire where the destruction by burning was accomplished. Defendant reported to the police that his car had been stolen and filed a claim with his insurance carrier.

A few days later, the third person who had bungled his attempt confessed to police his involvement, and implicated the

two accomplices who had succeeded. Those two in turn implicated the defendant and eventually testified against him, after being granted immunity from prosecution by state and federal authorities. Thus it happened that defendant, knowing nothing about the statements against him, voluntarily went to the Brattleboro police station in response to a police request. Without arresting him, the police read defendant the *Miranda* warnings, and defendant executed a waiver of his rights thereunder. When he was then confronted with evidence that his partners in crime had implicated him, defendant became upset, said he had to talk to somebody, and left.

## I.

Defendant's first argument is that, under our holding in *State* v. *Huginski*, 139 Vt. 95, 422 A.2d 935 (1980), the trial court lacked jurisdiction over the offense charged. Defendant claims that since many of the arrangements and the actual burning took place in New Hampshire, the acts which did occur in Vermont did not constitute "counseling." 13 V.S.A. § 2 gives the courts of this state jurisdiction whenever "[a] person who, with intent to commit a crime, does an act within this state in execution or part execution of such intent, which culminates in the commission of a crime either within or without this state . . . ." In *Huginski*, the defendant made all the arrangements for the burning of his Vermont home in New York and Connecticut. No act of procuring or counseling was shown to have occurred in Vermont. *Id.* at 98, 422 A.2d at 937. Here, however, the initial arrangements for burning the car were made with the accomplices in Vermont. Moreover, defendant left his car with the keys in it and a note of instructions to his accomplices, at his Brattleboro, Vermont, worksite. Viewing the evidence in the light most favorable to the State, the trial court correctly exercised jurisdiction over the offense charged in the information.

## II.

Defendant's second contention is that it was plain error to charge the jury that the State occupied a different position from that of a private party when it called a witness because of the State's duty to shed all light possible on the incident. In recent years, this Court has frequently reviewed

similar instructions and has provided the trial bench and bar with guidelines in such cases. See, e.g., *State* v. *Gates*, 141 Vt. 562, 451 A.2d 1084 (1982) ; *State* v. *Jaramillo*, 140 Vt. 206, 209, 436 A.2d 757, 759 (1981) ; *State* v. *St. Amour*, 139 Vt. 99, 102–03, 422 A.2d 937, 939 (1980). In *Gates*, we held that trial courts may no longer instruct juries in this manner and that if the defense makes timely objection to such an instruction, failure by the court to correct the error will mandate reversal. *State* v. *Gates*, *supra*, 141 Vt. at 573, 451 A.2d at 1091. In the case now before us, defendant did not timely object to the instruction. Further, the trial court cautioned the jury about giving undue weight to State witnesses. Finally, the defendant has not demonstrated prejudice as a result of the potentially erroneous charge. With these factors in mind, we find that defendant has not met his burden of showing plain error as required by V.R.Cr.P. 52. Thus, he does not overcome his failure to object properly to the charge below.

### III.

The third issue is whether the defendant's Fifth and Fourteenth Amendment rights were violated by the State's use of defendant's prearrest silence following receipt of *Miranda* warnings and the execution of a waiver. As noted above, defendant voluntarily went to the police station at police request, ostensibly to discuss matters relating to the "theft" of his car. Upon his arrival, he was read and subsequently waived his *Miranda* rights. Immediately thereafter, officers told defendant what they had found out from the accomplices. According to the officer's testimony during the State's case in chief, "[w]hen he found out what we had learned and why we wanted to talk to him, he just got up and said, 'I have got to talk to somebody.' And he walked out of the police station."

At trial, the court allowed over objection the prosecution's use of the above exchange, as well as the officer's observations that the defendant, when confronted, "seemed very upset—almost surprised, I think—he became very nervous." The defendant later chose to take the stand in his own defense, and testified on direct examination essentially in accordance with the above-quoted officer's testimony. On cross-examination, the state's attorney elicited testimony that defendant had not de-

nied the accusations but merely said, "I got to talk to somebody" and left. Finally, during closing arguments, the State argued as follows:

> If Mr. Mosher's testimony here today was the truth, why didn't he, ladies and gentlemen, why didn't he deny right then and there to [the officer] at the police station that it was a story that [the accomplices] had told, that it was a bunch of malarkey.
>
> If that story is the same that he told his mother when he come [sic] home at two o'clock in the morning on the [day following the burning] . . . why didn't he go in and tell the police the next day?

## A.

Before reviewing defendant's claims of error, we must first dispose of a threshold inquiry. Although defendant initially waived his *Miranda* rights, it is beyond dispute that his subsequent actions effectively reasserted those rights. The State has the burden of proving "an intentional relinquishment or abandonment of a known right or privilege" and the courts must "indulge in every reasonable presumption against waiver." *Brewer* v. *Williams,* 430 U.S. 387, 404 (1977). The fact that defendant clearly was under the misimpression that he had been asked to come to the police station regarding his complaint of a stolen car, and that he signed the *Miranda* waiver form while under that misimpression, casts considerable doubt on the effectiveness of the initial waiver.

In any event, "[i]f the individual indicates *in any manner,* at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda* v. *Arizona,* 384 U.S. 436, 473–74 (1966) (emphasis added). "Valuable rights are not lost through their inartful assertion . . . ." *United States* v. *Crowder,* 691 F.2d 280, 282 (6th Cir. 1982). When defendant said, "I have got to talk to somebody," he was clearly indicating that he did not wish to discuss the accusations further. See *id.* at 282–83. The age of defendant, eighteen years old, his emotional and mental maturity, prior experience with police, his family environment and education all bear on the degree of sophistication needed to invoke

successfully the Fifth Amendment. *Fare* v. *Michael C.*, 442 U.S. 707, 725–26, 734 n.4 (1979). We do not attach significance to defendant's failure to use the word "lawyer" in his request, particularly where, unlike the defendant in *Fare* v. *Michael C.*, *supra*, defendant here did not know the true reason for his police-requested presence. Thus, we treat defendant's statement that he had to talk to "somebody" as an effective invocation of his right to remain silent. In light of the totality of the circumstances, the conduct of the eighteen-year-old defendant amounted to a revocation of his earlier waiver of his *Miranda* rights.

Thus, we have a situation where the prosecution used in its case in chief and during closing arguments (1) the fact of defendant's assertion of his Fifth Amendment rights, and (2) defendant's subsequent silence and his failure to provide an exculpatory explanation to law enforcement officers. In addition, the State chose to emphasize both defendant's silence and his unease and agitation after being accused during its closing argument and invited the jury to draw inferences from that silence.

### B.

██ Although it would seem that the applicable law on the use of defendant's silence is well settled, the State's prosecution of this case suggests that some basic constitutional rules should be stressed. The defendant has the right "to remain silent unless he chooses to speak in the unfettered exercise of his own will." *Malloy* v. *Hogan*, 378 U.S. 1, 8 (1964). In order to protect this valuable right, the Supreme Court has held that "it is impermissible to penalize an individual for exercising his Fifth Amendment privilege . . . . The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation." *Miranda* v. *Arizona*, *supra*, 384 U.S. at 468 n.37 (citations omitted) ; see also *United States* v. *Crowder*, *supra*; *Baker* v. *United States*, 357 F.2d 11 (5th Cir. 1966) ; *United States* v. *Kroslack*, 426 F.2d 1129 (7th Cir. 1970) ; *Hobbs* v. *State*, 277 Ark. 271, 641 S.W.2d 9, 13–16 (1982).

Similarly, the defendant is not required to provide an exculpatory explanation to law enforcement officers. Here, the eighteen-year-old defendant had just been told by one police

detective, while another stood by, that he had the right to remain silent and that anything he said might be used against him in court. Immediately thereafter, he was confronted with the confessions of his friends. Silence under these circumstances is "insolubly ambiguous." *Doyle* v. *Ohio,* 426 U.S. 610, 617 (1976). We do not decide whether every post-*Miranda*-warning silence is similarly ambiguous. However, governmental action may well have induced the defendant to remain silent before his arrest. Consequently, the concerns of fundamental fairness discussed in *Doyle,* and equally, the very low probative worth of such statements discussed in *United States* v. *Hale,* 422 U.S. 171, 179–80 (1975), preclude the admission of defendant's silence here.

The existence of mistaken advice to the defendant about the applicability of the privilege against self-incrimination does not change the outcome.[1] "Elementary fairness requires that an accused should not be misled on that score." *Johnson* v. *United States,* 318 U.S. 189, 197 (1943). When the police detective, who clearly was in a position to give such assurances, apprised the defendant that he had the right to remain silent, such silence may not thereafter be used in the prosecution's case in chief. To do so would "sanction the most indefensible sort of entrapment by the State—convicting a citizen for exercising a privilege which the State clearly had told him was available to him." *Raley* v. *Ohio,* 360 U.S. 423, 438 (1959).

We find no authority for the proposition that it is not error for the State to use defendant's silence as substantive evidence of guilt.[2] However, ample authority exists for the opposite proposition. See, e.g., *United States* v. *Lopez,* 575 F.2d 681 (9th Cir. 1978); *Egger* v. *United States,* 509 F.2d 745

---

[1] From the record now before us, it appears that defendant was not undergoing custodial interrogation. Thus, under Supreme Court holdings, it was not required that he be given the *Miranda* warnings. *Oregon* v. *Mathiason,* 429 U.S. 492 (1977).

[2] We do not address the use of defendant's post-*Miranda* silence as impeachment evidence on cross-examination. Cf. *Jenkins* v. *Anderson,* 447 U.S. 231, 235 (1980). Our focus instead is on the State's use of defendant's silence during its case in chief and during closing arguments, uses which constitute plain error under *Doyle* v. *Ohio, supra,* 426 U.S. at 619; see also *Booton* v. *Hanauer,* 541 F.2d 296 (1st Cir. 1976); *United States* v. *Ghiz,* 491 F.2d 599 (4th Cir. 1974).

(9th Cir. 1975) ; *United States* v. *Moore,* 484 F.2d 1284 (4th Cir. 1973) ; *United States* v. *Brinson,* 411 F.2d 1057 (6th Cir. 1969) ; *United States* v. *Brierly,* 384 F.2d 992 (3d Cir. 1967). Suffice it to say that the State commits error when it uses the defendant's failure to deny accusations, after defendant has been given his *Miranda* warnings, as a tacit admission of guilt.

## C.

 The State offers alternative arguments to justify the use in its case in chief of defendant's assertion of his Fifth Amendment rights and for his failure immediately to provide an exculpatory explanation. First, it argues that defendant "invited error" by conducting a voir dire examination of the police officer in the presence of the jury, and therein elicited the same evidence now claimed to violate his rights. In support of this argument, authority is given for the proposition that when a party brings an issue before the trier of fact, he cannot later complain if the adverse party more fully explores or comments about that issue. See, e.g., *State* v. *Blaise,* 138 Vt. 430, 435–36, 418 A.2d 27, 31 (1980) ; *Cone Realty Corp.* v. *Smith,* 137 Vt. 567, 568, 409 A.2d 567, 569 (1979).

In effect, the State asserts that defendant "opened the door" to the potentially prejudicial testimony by the conduct of a limited voir dire. As has been said, "[s]trange cattle having wandered through a gap made by himself, he cannot complain." *Sisler* v. *Shaffer,* 43 W. Va. 769, 771, 28 S.E. 721, 721 (1897). See generally McCormick on Evidence § 57 (2d ed. 1972).

 However, the record here will not support such analysis. Defendant objected unsuccessfully four times during the questioning of the officer by the State on this issue; he had a bench conference to present his objections out of hearing of the jury and he voir dired the officer to establish precisely the point at which the right to remain silent was asserted. The statements made by the officer during voir dire were carefully and neutrally phrased. Prejudice was introduced during direct examination when the prosecutor elicited testimony about defendant's attitude and demeanor as he left the police station. Thus, the door was opened by the prosecutor, not by the defendant.

In the alternative, the State argues what appears to be a "relation-back doctrine" of impeachment: "Even assuming it was error for this evidence to be admitted, the error was harmless because it could have subsequently been introduced to rebut defendant's testimony." We reject this argument because it assumes without basis that the defendant would inevitably have taken the stand in his own defense. "[T]he central purpose of the Fifth Amendment privilege is to protect the defendant from being compelled to testify against himself at his own trial." *Jenkins, supra,* 447 U.S. at 242. It may well be that his ultimate decision to testify was influenced by the fact that some of the most potentially damaging evidence against him had already come before the jury. The testimony in question came in during direct examination by the State of its first witness. The defense had reserved its right to make an opening statement, and until the prejudicial series of questions, the defendant had not even objected. On this record, we fail to see the relevance of the narrow exception whereby a defendant's silence can be used as impeachment evidence to rebut defendant's deliberate misimpression, where no such misimpression has been made.

## D.

Therefore, it is clear that error was committed here.[3] However, the State's use of such evidence in violation of the Fifth and Fourteenth Amendments, although of constitutional magnitude, is not per se reversible. *United States* v. *Lopez, supra,* 575 F.2d at 685. Thus, we must briefly review the facts of this case as applied to the two-part harmless error rule outlined in *State* v. *Howe,* 136 Vt. 53, 386 A.2d 1125 (1978).

In *Howe,* following the dictates of *Chapman* v. *California,* 386 U.S. 18, 23 (1967), this Court held that:

---

[3] We note in passing that defendant did not object to the use of this "evidence" in the closing argument. Even assuming arguendo that defendant had not effected a "continuing objection" to this evidence on the basis of his earlier, frequent objections and in camera conferences, nonetheless, error of constitutional magnitude is clearly within V.R.Cr.P. 52(b) contemplation as plain error. See *United States* v. *Lopez, supra,* 575 F.2d at 685; *United States* v. *Brinson, supra,* 411 F.2d at 1059.

A federal constitutional error can be held harmless only if the court is able to declare its belief, beyond reasonable doubt, that the shortage has not adversely affected the accused. And the conviction must be supported by overwhelming evidence of guilt.

*Id.* at 60, 386 A.2d at 1129. To phrase it another way, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman* v. *California, supra,* 386 U.S. at 24. Moreover, the beneficiary of the error, here the State, has the burden of proving that no injury occurred as a consequence of the error. Applying the foregoing standard to the record which is before the Court, it is clear that the error in this case was not harmless to defendant.

 Crucial to this analysis is the understanding that mere great weight of evidence of guilt will not obviate a constitutional error. That is but one part of a two-part test. *State* v. *Howe, supra,* 136 Vt. at 60, 386 A.2d at 1129. In addition, the evidence in question must not have contributed to the conviction. *Fahy* v. *Connecticut,* 375 U.S. 85, 86–87 (1963).

 Therefore, we now consider whether specific aspects of the evidence reasonably could have supported a judgment of acquittal. The State's case rested in large part on the testimony of an alleged accomplice, testimony which should be viewed with great caution. *United States* v. *Lee,* 506 F.2d 111, 118–19 (D.C. Cir. 1974), *cert. denied,* 421 U.S. 1002 (1975) ; *State* v. *Teitle,* 117 Vt. 190, 208, 90 A.2d 562, 574 (1952). This person, after a grant of immunity, admitted to taking the car and burning it. He also admitted that he hid in his closet when the police first came to question him. Six days after the burning, he gave the police a statement implicating defendant. The third accomplice, referred to above as having bungled his attempts to take the car, and who might have corroborated some of the crucial testimony, had left the jurisdiction and was unavailable at time of trial. Similarly, another individual whose name came up during trial who might have corroborated the State's version of the events also had left the jurisdiction and was unavailable.

Moreover, evidence of guilt was countered by the testimony of defendant and his mother, each of whom testified that the approximately $530 balance due on the car loan was prepaid in full shortly before the burning. Defendant also testified that he had raised the money to pay off the car loan by not making an insurance payment, leading him to believe that the insurance coverage had lapsed. He had recently installed new front tires in preparation for a drive to Florida. Both defendant and his mother testified that the note, which gave specific burning instructions and which was found torn in pieces near the accomplice's house, was not in fact written by defendant. There was also testimony that defendant, a tinkerer, took considerable pride in his car and spent all his free time working on and photographing it.

While we express no opinion as to whether the jury should have returned a guilty verdict given the fact that so much of the evidence was in conflict, it is clear that "overwhelming evidence of guilt" is not present here. For the most part, the State's case turned on the credibility of the witnesses. Therefore, it is at least possible that the jury considered the agitation of defendant and his disinclination to explain immediately his actions to the police as probative of his guilt. This situation is clearly distinguishable from the use of objective evidence of intoxication properly admitted in driving under the influence prosecutions. Here, the agitation was induced by police conduct and not merely observed by the police. Further, it is most unlikely that the State would so persistently have fought to bring this testimony before the jury if it were insubstantial. Here, the State not only persevered in the face of numerous defense objections, but it also reemphasized defendant's silence during closing arguments, inviting the jury to draw inferences from that silence. The State has not met its burden of showing beyond a reasonable doubt that this is harmless constitutional error and we so hold.

We note finally that our holding here applies to the record now before this Court. The United States Supreme Court has highlighted several factors as most significant when reviewing constitutional error claims of this sort: whether the comment by the prosecution is extensive, whether the inference of guilt from silence is stressed to the jury as a basis of

conviction and whether there is evidence that could have supported acquittal, *Anderson* v. *Nelson*, 390 U.S. 523, 523–24 (1968).[4] Given that all are present here, we are therefore required to reverse defendant's conviction and remand for a new trial.

*Reversed and remanded for new trial.*

---

[4] *Anderson* v. *Nelson* deals with the failure of a defendant to testify in his own defense. However, for purposes of this analysis, the significant factors showing potential reliance are the same. See Comment, 31 U. Chi. L. Rev. 556, 565 (1964), *cited with approval in Miranda* v. *Arizona, supra,* 384 U.S. at 468 n.37.