## State of Vermont v. Michael T. Kilborn

[466 A.2d 1175]

No. 82-031

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed September 6, 1983

Motion for Reargument Denied October 6, 1983

*John J. Easton, Jr.*, Attorney General, and *Jane Hart Marter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Andrew B. Crane*, Defender General, and *William A. Nelson*, Appellate Defender, Montpelier, for Defendant-Appellant.

**Underwood, J.** This is an appeal from the defendant's conviction by jury of driving while under the influence of intoxicat-

ing liquor. 23 V.S.A. § 1201(a)(2). He argues, inter alia, that the court erred by admitting into evidence statements made by him to a state police officer which were inadmissible under *Miranda* v. *Arizona*, 384 U.S. 436 (1966). We agree and reverse.

The pertinent facts are as follows. On May 3, 1981, defendant was arrested for DUI. He was taken to the state police barracks where he was read what were purported to be his *Miranda* rights. Specifically, defendant was advised of the following:

> You may remain silent. Anything you say can be used against you. You may refuse to answer any questions asked of you at any time. If you cannot afford an attorney and want one, you can contact the public defender or one will be contacted for you before questioning.

After stating that he understood these rights, defendant requested to speak with a lawyer. A public defender was contacted, and defendant spoke with him on the phone. Once the call was completed, an officer asked defendant if he was willing to make a statement. Defendant replied that he was willing to do so and proceeded to answer the officer's questions.

On October 28, 1981, defendant's trial commenced. On that same day, defendant filed a motion to suppress the statements he made at the barracks. The motion was heard and denied during the course of the trial.

At trial, the State put the arresting officer on the witness stand. He testified that the car defendant was driving weaved across the centerline of the road at least three times. When he stopped the car and spoke to defendant, he noticed the odor of liquor on his breath. He asked defendant to walk heel to toe along the white line at the shoulder of the road. Defendant was unable to do this satisfactorily. Based on these observations the officer stated his opinion that the defendant was driving under the influence of intoxicating liquor.

On cross-examination the defense counsel asked the officer if people sometimes weave over the centerline and fail the heel-toe test without being under the influence. The officer replied in the affirmative. The defense counsel then asked if a driver might cross the line and fail the test because he was sick or injured. Again, the officer responded in the affirmative.

On redirect examination the state's attorney proceeded to question the officer as to whether he had asked the defendant at the baracks if he suffered from any physical injuries, handicaps, or illnesses. The defense objected. The questioning stopped and a hearing was held out of the presence of the jury. After testimony from the arresting officer and defendant concerning the questioning of defendant at the barracks, the court made oral findings from the bench. It held that (1) the statement taken by the officer complied with *Miranda,* and (2) the defendant had opened the door. With regard to the latter, the court stated that even if its finding that the statements were lawfully taken was incorrect, they were admissible because "counsel for defendant has opened up an avenue of questioning here raising the question before the jury as to whether or not the inability of the defendant to walk the straight line could have been something other than the result of intoxication."

The officer then testified before the jury that he had asked defendant if he was ill, suffered from recent injuries, or had any physical handicaps, and that defendant answered no to all three questions.

█ Defendant argues on appeal that the court erred in finding that his statements were not obtained in violation of *Miranda.* He maintains that under *Edwards* v. *Arizona,* 451 U.S. 477 (1981), once he invoked his right to counsel the police could not interrogate him lawfully unless counsel was made available to him or he initiated the communication. We need not reach this issue, however, since the purported *Miranda* warnings given to defendant were constitutionally defective in that they failed to apprise him of his right to have counsel present during questioning. *State* v. *Shores,* 143 Vt. 224, 227, 465 A.2d 269, 271 (1983). Although this defect was not raised by defendant, it constitutes plain error and as such is noticed by this Court. V.R.Cr.P. 52(b).

The second ground for the court's ruling was that the defense counsel "opened the door" for the admission of defendant's statements by her cross-examination of the police officer. The court ruled that the statements were admissible to rebut the inference raised by defense counsel that defendant's lack

of motor coordination skills was due to fatigue, illness, or injury rather than alcohol. We disagree.

The United States Supreme Court has allowed the use of illegally obtained evidence for impeachment of a defendant's direct or cross-examination testimony, *United States* v. *Havens,* 446 U.S. 620 (1980) ; *Oregon* v. *Hass,* 420 U.S. 714 (1975) ; *Harris* v. *New York,* 401 U.S. 222 (1971), to locate witnesses identified in the tainted evidence, *Michigan* v. *Tucker,* 417 U.S. 433 (1974), and in questioning a witness during grand jury proceedings, *United States* v. *Calandra,* 414 U.S. 338 (1974). See *United States* v. *Hinckley,* 672 F.2d 115, 133 n.117 (D.C. Cir. 1982). None of these three exceptions to the exclusionary rule are applicable to the State's use of the illegally obtained evidence in the instant case. The State has cited us no authority, nor has our own research revealed any, which supports its position that tainted evidence is admissible to rebut inferences raised by defense counsel. Absent any authority, this Court is not inclined, on the facts of this case, to create a further exception to the rule.

We also note that the United States Court of Appeals for the District of Columbia has recently addressed this issue in an analogous situation and reached the same conclusion. See *United States* v. *Hinckley, supra.* In holding that illegally obtained evidence was not admissible to rebut an insanity defense, the *Hinckley* court wrote that:

> The rationale of this [impeachment] exception to the exclusionary rule is that "[t]he shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." *Harris* v. *New York,* [401 U.S. 222, 226 (1971)]. This rationale simply will not support the government's desire to extend the exception to include use of tainted evidence for rebutting the substance of a defendant's testimony.

*Id.* at 133 n.117. We agree with this reasoning, and in so doing reject the State's position that the impeachment exception should be expanded to include the use of illegally obtained evidence for rebutting inferences raised by defense counsel.

The door was never opened in this case for admission of tainted evidence. The evidence offered and allowed was a part of the State's case-in-chief. The defendant had not testified and so there was nothing to impeach. Thus, the court erred in admitting the evidence. However, although the State's use of the tainted evidence is an error of constitutional magnitude, it is not per se reversible. *State* v. *Mosher*, 143 Vt. 197, 207, 465 A.2d 261, 267 (1983). Rather, this Court must determine whether or not the admission of such evidence constituted harmless error.

We have recently stated that "[t]o establish harmless error, the State, as the beneficiary of the error, must establish beyond a reasonable doubt: (1) that there was overwhelming evidence to support the conviction; and (2) that the evidence in question did not in any way contribute to the conviction." *State* v. *Shores, supra,* 143 Vt. at 228, 465 A.2d at 271 (citing *Chapman* v. *California,* 386 U.S. 18, 23 (1967); *Fahy* v. *Connecticut,* 375 U.S. 85, 86–87 (1963); *State* v. *Mosher, supra*). Upon reviewing the record in the instant case, we are not convinced that the evidence did not in any way contribute to the conviction.

The State's case rested on the testimony of the arresting officer that he believed defendant was driving while under the influence of alcohol. The officer testified that his opinion was based on defendant's weaving over the centerline while driving and his failure to perform the heel-to-toe test. On cross-examination, he admitted that the inability of defendant to keep his car in the right lane and to walk a straight line could have been the result of something other than intoxication—i.e., fatigue or illness. Subsequently, defendant testified that he did not perform well on the heel-to-toe test because he was sleepy and suffering from a head cold. Taken in conjunction with the officer's testimony on cross-examination, the defendant's explanation may well have raised a reasonable doubt in the jurors' minds as to defendant's guilt. However, this possibility was undercut by the tainted evidence that defendant told the officer that he was not sick, injured, or handicapped. Accordingly, we are not convinced beyond a reasonable doubt

that the tainted evidence did not contribute to defendant's conviction.

*Reversed and remanded.*

Peck, J., dissenting. For the reasons set forth below, I disagree with the result reached in this case by the majority. Accordingly, I must respectfully dissent.

After rehearsing several federal cases dealing with the admission of so-called tainted evidence, the majority appears to have reached three conclusions with which I am in disagreement. First, the majority contends the defendant did not open the door, on cross-examination of the prosecution's police witness, to the rebuttal question asked of the officer by the State on redirect. Second, I believe the attempt by the majority to tie the redirect examination question to the concept of impeachment is wrong. However objectionable the question may have been otherwise, it was not related to impeachment; indeed as the majority do note correctly there was nothing to impeach. Third, I submit the conclusion that the error was not harmless is not justified under the facts of this case.

Addressing my first objection relating to the defendant's cross-examination of the police officer, counsel inquired, in substance, whether the operator of a motor vehicle might cross the centerline of the highway, and thereafter fail the on-site sobriety tests as well because he was sick, fatigued, or injured. The officer of course answered in the affirmative. Through the device of this deceptively innocuous question and the officer's answer, defendant placed an inference before the jury that illness or other cause might explain the defendant's shortcomings rather than the ingestion of alcohol. The inference was given additional meaning later in the trial when defendant himself testified that his inability to perform the coordination test successfully was due to the fact that he was sleepy and had a head cold.

In considering this issue we should bear in mind that the question which first injected the fatigue-illness-injury possibility into the case did not come from the prosecution. The *defense* introduced it, later strengthening it during presentation of its case-in-chief, through testimony of the defendant himself.

To say, as the majority opinion does, that the defense opened no door by its pointed, unambiguous question to the officer, and that the prosecution was helpless to rebut the inferential possibility which the defense clearly wanted the jury to make, is contrary to the obvious. As a consequence, the pathway has been cleared for all manner of game playing, which leaves the prosecution helpless as far as its ability to clarify and put the game into its proper perspective is concerned.

My second objection to the majority opinion applies to its apparent reliance on the impeachment principle. Impeachment is not in the case. The question asked of the officer by the State had nothing to do with it. At that point the defense had presented nothing to impeach. No claim had been made that defendant was ill, injured or tired. Now, that possibility was in the minds of the jurors, there to begin its work. The inference of a possibility was in. The jury might, even then, begin to speculate and let its speculation solidify into a conviction requiring a later rebuttal by the State, rather than support by defendant. In fairness to the prosecution, the time to scotch the inference was upon its appearance, not after it has had its chance to take root and grow into an unexplained possibility "consistent with innocence." In my view, the door was opened wide on the State's right to put that inference in its proper perspective. This Court's denial of that right establishes a gag rule, fostered in part by a misapplication of impeachment.

The majority states next that it cannot say the "error" did not contribute to the conviction. Since courts do not attend jury deliberations, it is *never* possible to say that an error, however trivial, could not *possibly* have undermined a defendant's case. But *some* judgment must be applied; some common sense must be used in examining the likelihood or remoteness of a possibility. The evidence of defendant's guilt here is so persuasive that even if there was any error, which I do not concede, it is patently harmless. In my judgment, defendant has not been prejudiced.

The astute may argue that even if the State's question of the officer on redirect was rebuttal, it came at the wrong time; merely rebutting an unsupported inference is not permissible. The second step to this argument would be that because of the State's question defendant felt compelled to take the stand as a

witness on his own behalf which he would not, or might not, have done otherwise. My answer to this is that it is speculation. Defendant did not suggest or claim that he was effectively forced to take the stand against his better judgment. Accordingly, even if the State's question came before its time, it served to rebut defendant's later testimony that he was sleepy and suffering from a cold. The question would have been a proper rebuttal at that time, and there being no claim that he was compelled to take the stand, the error, if any, once again, was harmless.

The majority cites *State* v. *Shores,* 143 Vt. 224, 465 A.2d 269 (1983), in support of its conclusion. It should perhaps be pointed out to the majority that *Shores* does not rule out the possibility of harmless error, in fact the possibility is acknowledged expressly. That opinion merely recites the criteria for a finding of harmless error in certain cases, and concludes they were not satisfied in that case.

Finally, the majority expresses itself as unwilling to extend the exceptions established by federal cases relating to the admissibility of tainted evidence. Aside from the fact that the evidence in question here is not tainted to begin with in my view, I have only two comments. First, the cases cited involve impeachment, which is not truly involved here, as even the majority concedes. We are concerned here with the rebuttal of an inference. Secondly, assuming arguendo that the evidence is tainted and we are concerned somehow with impeachment, there is nothing in the federal cases which *prohibit* an extension in an appropriate case. I believe this is such a case. The mere fact that the particular circumstance here has not been addressed by the United States Supreme Court should not act as a deterrent to a serious consideration of additional extensions here; we might even be sustained.

In my view the majority has today thrown up still another roadblock to the efforts to control the awful carnage on our highways caused by irresponsible drinking drivers. Another shackle has been fastened around the prosecution. Given the vast array of protections established by the courts to protect the rights of those drivers, today's decision creates still another. It is not necessary and is not justified, either in principle or on the facts here. I would affirm.