### State of Vermont v. John Davis

[601 A.2d 1381]

No. 89-573

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed November 8, 1991

*Dan Davis*, Windham County State's Attorney, Brattleboro, and *Pamela Hall Johnson*, State's Attorneys and Sheriffs Department, Montpelier, for Plaintiff-Appellee.

*E.M. Allen*, Defender General, and *Kerry B. DeWolfe* and *William Nelson*, Appellate Attorneys, Montpelier, for Defendant-Appellant.

**Allen, C.J.** Defendant appeals his conviction of attempted voluntary manslaughter following a trial by jury. We affirm.

On the evening of September 6, 1988, defendant became involved in an argument with his friends, Tim O'Neil, Kevin O'Neil, and Brian Petrowicz, over a small debt and for their having abandoned him on the side of a road while he was riding with them into town. Defendant had been drinking heavily and became infuriated. He walked to his home and obtained from a gun cabinet a pistol that he and a friend had loaded with a single bullet the previous night. He then drove off in search of his friends. He stopped first at the O'Neil house where he forced his hand through a window in the front door. He eventually found his friends at the Petrowicz house. Hostility arose, and defendant became belligerent. He retrieved his gun from the car, pointed it at Petrowicz's head and pulled the trigger about three times. When the gun did not fire, defendant returned to his car and drove home.

Lieutenant Dennis Johnson, of the Vernon Police Department, located defendant at his house. Finding defendant's hand in need of medical attention, Lt. Johnson summoned an ambulance. Defendant agreed with the officer's suggestion that the two travel to the hospital together in the ambulance. During the ride, Lt. Johnson administered a *Miranda* warning to defendant and proceeded to ask him some questions. Defendant told the officer that he was out for revenge and had intended to kill the victim and the others.

Defendant was charged with attempted first degree murder. Prior to trial, he unsuccessfully sought to suppress the statements made to Lt. Johnson. He renewed this motion at trial, but after testimony was taken in camera, the trial judge admitted the statements. The jury returned a verdict of guilty of attempted voluntary manslaughter.

The defendant raises four claims of error: (1) the *Miranda* warning was defective; (2) the trial court erred in failing to give

a requested instruction on defendant's theory of the case; (3) the court incorrectly instructed the jury as to the intent required for attempted voluntary manslaughter; and (4) the court failed to properly instruct on diminished capacity.

## I.

Defendant moved prior to trial, and again at trial, to suppress statements made to Lt. Johnson on the grounds that defendant's waiver of his *Miranda* rights was not knowing and intelligent and that his statements were not voluntary because of the degree of his intoxication and injuries. On both occasions, the court ruled against defendant on these grounds, and he does not reassert them on appeal. Rather, he asserts, for the first time, that the *Miranda* warnings were incomplete.

At trial, Officer Johnson testified that he administered the following *Miranda* warnings to defendant:

> I advised John Davis that he did have a right to remain silent. That I was about to ask him some questions. That he had a right to have an attorney. If he could not afford an attorney, one would be appointed for him, free of charge. That he could stop answering questions at any time. And that he did not have to answer my questions, until he had an attorney.

This recitation does not explicitly apprise defendant of his right to have counsel present during interrogation. Defendant contends that, under our holding in *State v. Kilborn*, 143 Vt. 360, 363, 466 A.2d 1175, 1177 (1983), this omission constitutes plain error. We agree that adherence to *Kilborn* would dictate a finding of plain error. We held in that case that absence of an explicit statement that defendant had a right to have counsel present during interrogation rendered the *Miranda* warning categorically defective. *Id.* However, we now overrule *Kilborn* and hold that the sufficiency of *Miranda* warnings, when not raised below, will be evaluated based on the facts and circumstances of the particular case. Our decision today is consistent with *State v. Roy*, 151 Vt. 17, 23, 557 A.2d 884, 888 (1989), where we stated that "it would be bad policy to create a category of errors which are plain per se." Adoption of such an approach, we noted, would reduce the incentive for counsel to .object to errors below. *Id.*

510

 As a general rule, defendants must bring suppression issues to the attention of the trial court prior to trial. V.R.Cr.P. 12(b)(3). Failure to do so results in waiver. V.R.Cr.P. 12(f). When limited to plain error analysis by V.R.Cr.P. 52(b), we will no longer find plain error in every case where deficient *Miranda* warnings are challenged for the first time on appeal. This Court will find plain error only in the rare and extraordinary case where the error is obvious and so grave and serious that it strikes at the very heart of a defendant's constitutional rights or adversely affects the fair administration of justice. *State v. Schmitt*, 150 Vt. 503, 505, 554 A.2d 666, 667 (1988).

██ After a careful review of both recitations of the warnings given by Officer Johnson and the full record, we find the error here neither obvious nor so serious that it affects defendant's constitutional rights or the fairness of his trial. Officer Johnson advised defendant of his right to remain silent, to have an attorney, and to not answer questions until he had an attorney. Taken together, these warnings reasonably conveyed defendant's right to have an attorney present during interrogation, though they did not do so explicitly. See, e.g., *Sweeney v. United States*, 408 F.2d 121, 125 (9th Cir. 1969) (no plain error where warnings, although they could have been more explicit, communicated substance of *Miranda* requirements).

## II.

One of defendant's arguments at trial was that he did not possess a specific intent to kill because he thought the gun was unloaded. Defendant proffered the following instruction:

> You must find the defendant not guilty if the State has failed to prove, beyond a reasonable doubt, that the defendant intended to kill Brian Petrowicz.

> In this regard, you must find the defendant not guilty if you have any reasonable basis to believe that the defendant was not aware, at the time of the alleged offense, that there was a bullet in the gun.

██ The trial court did not err in refusing to charge in accordance with defendant's request. The instructions given fully and fairly apprised the jury that the crime of attempted man-

slaughter requires the specific intent to kill. The jury could not have concluded that defendant had this intention without confronting defendant's argument that he thought the gun was unloaded.

Defendant next claims that the court erroneously omitted from its charge to the jury the requirement that they must find that defendant possessed the specific intent to kill, and not just shoot, the victim. The court instructed:

> The last element of the offense is that the defendant acted intentionally. This element is essentially the same as willfully. Here you must be convinced that the acts performed by the defendant were done willfully and voluntarily and not out of accident or mistake. The focus in this case is upon the attempted shooting of Brian Petrowicz. The state must show a conscious intentional performance of the act of attempting to shoot the victim.

■■ Defendant bases his claim of error on this isolated instruction. On review, however, we must look at the "charge as a whole, rather than piecemeal." *State v. Norton*, 147 Vt. 223, 235, 514 A.2d 1053, 1061 (1986). The trial judge cautioned the jurors to do the same: "You are not to single out one instruction alone as stating the law. You must consider these instructions as a whole." Viewing the jury instructions as a whole, we find that they "adequately covered the point charged and amply protected the rights of the defendant." *State v. Gokey*, 136 Vt. 33, 36, 383 A.2d 601, 603 (1978).

Immediately before the isolated instruction complained of, the court properly instructed on the elements of attempted voluntary manslaughter: "First, the attempted taking of the life of another human being by the defendant. Second unlawfully. And third, intentionally." Earlier, during the charge on attempted murder, the court instructed that the State had to prove that it was "the act or acts of the defendant that attempted to bring about the death of Brian Petrowicz." Later, during the instruction on provocation, the court explained that manslaughter was an "intentional, unlawful killing, done out of sudden passion or great provocation." The court again emphasized the importance of the intent requirement by pointing out that intoxication may sufficiently impair a person "to prevent that person from form-

ing the specific intent" required for manslaughter. Finding that the charge as a whole "breathes the true spirit and doctrine of the law," *Fassett v. Town of Roxbury*, 55 Vt. 552, 556 (1883), we cannot agree that the isolated language complained of amounts to error.

Defendant also claims error in the judge's instructions on diminished capacity. At one point during his charge, the judge explained that "[a]s applied in this case, diminished capacity simply defined results in malice negated. Without malice, homicide cannot be murder, in any degree, and may only be manslaughter." Defendant argues that the judge could have led the jury to believe that diminished capacity could serve only to mitigate murder to manslaughter. The issue of diminished capacity was not raised until this appeal. Accordingly, we will not review the claim unless it amounts to plain error. V.R.Cr.P. 52(b).

There is no plain error in the instructions. The judge clearly instructed the jury on diminished capacity. His explanation that, if diminished capacity negated malice, defendant could not be convicted of murder was merely an illustration of the effect of diminished capacity, and was not meant to be a limitation. The judge explained that, in general, diminished capacity is a mental disability that might prevent defendant from forming a specific intent as to an element of an offense. He told the jury that if the State failed to prove each element of an offense, it must find defendant not guilty of that offense. Concluding, the judge stated: "If you find that the defendant, because of his intoxicated state, was incapable of formulating the specific intent required to commit murder or any of the lesser included offenses described, then you must find the defendant not guilty." Defendant's claim of plain error is without merit.

*Affirmed.*