NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 39

No. 2017-371

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Caledonia Unit, |
| | Criminal Division |
| | |
| Jeremy Fischer | January Term, 2019 |

M. Kathleen Manley, J. (Ret.)

David Tartter, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Dawn Matthews, Appellate Defender, Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **REIBER, C.J.** Following a jury trial, defendant appeals his conviction of sexual assault of a minor in violation of 13 V.S.A. § 3252(c). Defendant argues the trial court violated his due process rights by allowing the State to impermissibly comment on his silence. We affirm.

¶ 2. In December 2015, the State charged defendant with sexual assault of a minor based on an allegation that defendant raped the complainant. Prior to defendant's arrest, Detective Tallmadge interviewed defendant. Detective Tallmadge testified about this interview at trial. He reported that he told defendant he did not have to speak to him. He did not give defendant a Miranda warning. He said that he told defendant about the allegation against him, and defendant denied it. He also testified that when he asked defendant about the complainant,

defendant said "he would never do anything sexual with her because she was nasty, which was a direct quote, and a child, which is another direct quote." The State asked if defendant "ever [made] any statements about why you were there to talk to him, any further statements about why you were there to talk to him." Detective Tallmadge testified, "He indicated that he felt insulted that I was there interviewing him about the allegations."

¶ 3. Defendant testified at trial. He confirmed he was with the complainant on the evening of the alleged assault. He testified that the complainant had been "[k]ind of trying to nuzzle me a little bit, kind of trying to be flirtatious, making passes" and had been trying "to kind of pursue me." He said he had tried to avoid her and dismiss the situation and that he had "felt uncomfortable." He testified there was no sexual contact between them.

¶ 4. On cross-examination, the State asked defendant, "And you mentioned that [the complainant] was trying to nuzzle with you, you were feeling uncomfortable, and that she pursued you, correct?" Defendant answered, "Correct." The State then asked, "And you didn't tell Detective Tallmadge any of that during your interview with him, did you?" Defendant replied, "I did not." Defendant also confirmed that he had been convicted of providing false information to a police officer in 2016.

¶ 5. The State's closing arguments raised defendant's failure to tell Detective Tallmadge that the complainant tried to pursue him. After noting that defendant and the complainant told different stories about what had happened that evening, and that the jury had to "figure out what to believe," the State said:

> [Defendant] did admit that he didn't tell Detective Tallmadge that [the complainant] came on to him or was pursuing him or was nuzzling him. And he didn't admit to Detective Tallmadge—he had every chance—that he'd been uncomfortable with [the complainant's] behavior. . . . He did admit he has a conviction for false information to a law enforcement officer.

2

The State reiterated that defendant had a prior conviction for providing false information to a law enforcement officer. After defendant's closing argument, the State again raised defendant's failure to tell Detective Tallmadge that the complainant had pursued him: "And why didn't the defendant tell the cop what really happened? Why didn't he say she was badgering me that night, she was coming on to me?" The jury returned a guilty verdict, and the court entered judgment.

¶ 6.     On appeal, defendant argues the State impermissibly commented on his right to remain silent, which violated his right to due process. Defendant did not raise his challenge below, so we review for plain error. State v. Yoh, 2006 VT 49A, ¶ 36, 180 Vt. 317, 910 A.2d 853; see also State v. Haskins, 2016 VT 79, ¶ 41, 202 Vt. 461, 150 A.3d 202 (reciting four-part test for plain error, including that there must be error).

¶ 7.     Defendant's argument derives from Doyle v. Ohio, 426 U.S. 610 (1976), and State v. Mosher, 143 Vt. 197, 465 A.2d 261 (1983). In Doyle, two defendants were arrested and given Miranda warnings. 426 U.S. at 618; see Miranda v. Arizona, 384 U.S. 436, 467-73 (1966) (requiring that "if a person in custody is to be subjected to interrogation, he must first be informed . . . that he has the right to remain silent"). They both remained silent after arrest, but at trial they testified that they were framed. On cross-examination, the State impeached the defendants by asking why they did not inform the arresting officer they had been framed. The U.S. Supreme Court held that impeaching the defendants using their silence at the time of arrest, after receiving Miranda warnings, violated the Due Process Clause of the Fourteenth Amendment. Doyle, 426 U.S. at 619. The Court reasoned that any silence following a Miranda warning is "insolubly ambiguous" because Miranda warnings advise someone taken into custody "that he has the right to remain silent, that anything he says may be used against him," and "[s]ilence in the wake of these warnings may be nothing more than the arrestee's exercise of these Miranda rights." Id. at 617. The Court admitted that Miranda warnings "contain no express

3

assurance that silence will carry no penalty," but "such assurance is implicit" to the Miranda warning. Id. at 618. The Court concluded, "In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." Id.; see also State v. Ladue, 2017 VT 20, ¶ 21, 204 Vt. 502, 168 A.3d 430 (discussing cases following Doyle and emphasizing "the Doyle holding rests on the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial" (quotation omitted)).

¶ 8.     We followed the same principle in State v. Mosher. 143 Vt. 197, 465 A.2d 261. In Mosher, the defendant initially received Miranda warnings and then executed a Miranda waiver relinquishing his right to be silent. After police confronted him with the allegation against him, however, defendant said, "I have got to talk to somebody," and left the police station. Id. at 202, 465 A.2d at 264. The State elicited testimony at trial about this exchange and commented on his failure to deny the allegation during closing argument. This Court held that although the defendant initially waived his right to be silent, he re-asserted that right when he refused to speak to police and left the police station. Id. at 203-04, 465 A.2d at 264-65. Because the defendant asserted his right to be silent, and asserted that right after he received a Miranda warning, we concluded that "governmental action may well have induced the defendant to remain silent" and "the concerns of fundamental fairness discussed in Doyle," as well as its "very low probative worth . . . , preclude the admission of [the] defendant's silence here." Id. at 205, 465 A.2d at 265.

¶ 9.     In contrast, in Anderson v. Charles, the U.S. Supreme Court reasoned that it did not violate the Fourteenth Amendment when the State impeached a defendant based on his inconsistent statements, rather than his silence. 447 U.S. 404, 409 (1980) (per curiam). The Court emphasized that Doyle "bars the use against a criminal defendant of silence maintained

4

after receipt of governmental assurances," but it "does not apply to cross-examination that merely inquires into prior inconsistent statements." Id. at 408. In that situation, the defendant "voluntarily speaks after receiving Miranda warnings," and so "has not been induced to remain silent." Id. The Court admitted that the defendant's "two inconsistent descriptions of events may be said to involve 'silence' insofar as [each] omits facts included in the other version," but the Court rejected that "formalistic understanding of 'silence.' " Id. at 409.

¶ 10. Similarly, in State v. Ladue, we held that "the holding in Doyle does not bar cross-examination as to prior inconsistent statements made by the defendant because a defendant who voluntarily speaks after receiving Miranda warnings has not been induced to remain silent." 2017 VT 20, ¶ 21 (quotation omitted). Therefore, we held there was no constitutional violation in that case, where the State commented on the defendant's silence after he had "explicitly waived his Miranda rights and spoke[n] to police about the same facts that defendant now asserts he had a right to silence." Id. ¶ 20. In sum, Doyle and Mosher prohibit the State from commenting on a defendant's post-Miranda silence, but Anderson and Ladue make clear that the same prohibition does not apply where a defendant has not been induced into remaining silent and cross-examination inquires into defendant's prior inconsistent statements.

¶ 11. State v. Hunt articulates the distinction between remaining silent and electing to speak. 150 Vt. 483, 555 A.2d 369 (1988). In Hunt, the defendant initially confessed to police that he committed murder but claimed at trial that he had been in a trance at the time. The defendant argued on appeal that the State violated his due process rights when it impeached him for failing to tell police about this trance at the time that he confessed to the crime. We rejected the defendant's argument and his reliance on Doyle, stating that "defendant did not eventually invoke his right to remain silent, but he chose to speak to the police and confess to the killing." Id. at 500, 555 A.2d at 380. We reasoned, "[T]he prosecutor did not penalize defendant for exercising his Fifth Amendment rights; he never asserted those rights. Once a defendant decides

to speak, his failure to speak in exculpation cannot be explained away as a response to <u>Miranda</u> warnings." <u>Id.</u> (quotation and alteration omitted). We acknowledged that "a defendant is not required to provide an exculpatory explanation to law enforcement officers," and thus "the prosecution may not use at trial the fact that he stood mute or claimed his privilege in the face of accusation." <u>Id.</u> (quotation and alteration omitted). But "where defendant has chosen not to remain silent, the prosecutor may comment to the jury, and use for impeachment, inferences from the statements which he made of his own volition." <u>Id.</u> We explained:

> A defendant cannot have it both ways. If he talks, what he says or omits is to be judged on its merits or demerits, and not on some artificial standard that only the part that helps him can be later referred to. This was not a case where the government commented upon a prior exercise of rights. The government asked the jury to measure what the defendant said when he had no rights because he had voluntarily waived them.

<u>Id.</u> at 500-01, 555 A.2d at 380 (quotation and alterations omitted).

¶ 12. Here defendant did not assert his right to silence.[1] He spoke with Detective Tallmadge. He told Detective Tallmadge he did not sexually assault the complainant; that "he would never do anything sexual with her because she was nasty . . . and a child"; and that he felt insulted by the allegation. Under the facts of this case, commenting on defendant's omissions does not raise the concerns of fundamental fairness and due process present in <u>Doyle</u>. The prosecution was free to impeach defendant based on what he said and failed to say. See <u>Anderson</u>, 447 U.S. at 408 (holding prosecution is free to inquire into prior inconsistent statements where defendant chooses to speak); see also <u>Hunt</u>, 150 Vt. at 500, 555 A.2d at 380 (stating that where defendant chose not to remain silent, "what he says or omits is to be judged

---

[1] Because we decide the case on these grounds, we do not consider whether <u>Doyle</u> would apply if defendant had invoked his right to remain silent, given that the officer did not provide a <u>Miranda</u> warning but did tell defendant that he did not have to speak to the officer.

6

on its merits or demerits, and not on some artificial standard that only the part that helps him can be later referred to" (quotation omitted)).

¶ 13.   Defendant argues that Ladue allows the State to comment on the omissions in defendant's statements only when the statements made to the police are inconsistent with defendant's testimony at trial.  2017 VT 20, ¶¶ 21-25.  Defendant points out that what he told Detective Tallmadge did not contradict what he said later at trial; it simply omitted some of the details.  Although we referred repeatedly to "inconsistency" in Ladue, the decision hinged upon the fact that a defendant who "voluntarily speaks after receiving Miranda warnings has not been induced to remain silent."  Id. at ¶ 21.  As such, commenting on what the defendant said or chose not to say does not implicate defendant's constitutional right to remain silent.  However, even accepting defendant's view of Ladue, the State acted permissibly here.  Initially, defendant offered one explanation of the events to Detective Tallmadge.  Then, defendant offered a different explanation at trial.  Although the two explanations could conceivably work in conjunction, the fact that defendant offered two independent explanations at two distinct times raises the question of defendant's credibility—a question that was fairly brought to the jury's attention.  See United States v. Ochoa-Sanchez, 676 F.2d 1283, 1286 (9th Cir. 1982) ("When the defendant offers testimony at trial that differs from his post-arrest statement, he raises a question of credibility. . . .  In such a situation, the jury is entitled to all the relevant evidence bearing on credibility.").

¶ 14.   This was the same approach we took in Hunt.  150 Vt. 483, 555 A.2d 369.  In that case, the defendant's initial story (he had committed murder) was different from, but arguably consistent with, what he claimed at trial (he had committed murder while in a trance).  We held that it was permissible for the State to comment on the defendant's failure to tell the police about the trance, relying on the fact that the defendant had spoken, and therefore had not remained

7

silent. Id. at 500, 555 A.2d at 380. We did not rest our decision on any inconsistency between the two accounts.

¶ 15. Additionally, defendant claims that the State impermissibly raised the issue of what defendant failed to say to Detective Tallmadge as substantive evidence of guilt in its case-in-chief. See Mosher, 143 Vt. at 204-06, 465 A.2d at 265-66 (holding prosecution's use of defendant's silence in case-in-chief as substantive evidence of guilt was impermissible use of silence). Defendant misrepresents the record. The prosecution did not introduce evidence about defendant's failure to speak as substantive evidence of his guilt. Nor did the State reference defendant's failure to speak in its case-in-chief. Rather, the State commented on defendant's omissions in cross-examination and in closing argument, and it relied on that evidence to show that defendant was untrustworthy—not to suggest that only a guilty individual would have failed to offer police an exculpatory explanation. See Anderson, 447 U.S. at 409 (emphasizing that State's "questions were not designed to draw meaning from silence, but to elicit an explanation for a prior inconsistent statement").[2]

¶ 16. Defendant also argues, citing United States v. Canterbury, that partial silence does not bar a defendant from succeeding on a due process claim under Doyle. 985 F.2d 483, 486 (10th Cir. 1993). Defendant contends that his statements to Detective Tallmadge consisted of a partial or incomplete statement, and therefore it was impermissible for the State to criticize him for those statements.

¶ 17. According to Canterbury, "partial silence" may not preclude a defendant from arguing a due process violation in some circumstances. Id. Canterbury cites to United States v. Harrold, which explains that a defendant is partially silent when the defendant "answer[s] some

_____

[2] Because the State did not introduce evidence of defendant's failure to speak as substantive evidence of guilt in its case-in-chief, we need not address whether it would have been permissible for the State to do so.

8

questions and refuse[s] to answer others." 796 F.2d 1275, 1279 n.3 (10th Cir. 1986). We do not decide whether partial silence may receive protection in some circumstances because defendant was not partially silent here. Defendant chose to respond to each of the detective's questions and did not refuse to answer any specific questions. In this situation, defendant cannot claim a due process violation. See Hockenbury v. Sowders, 718 F.2d 155, 158 (6th Cir. 1983) (holding defendant was not silent because he made statements about his "whereabouts at the time of the robberies, the same subject matter as his detailed testimony at trial," and "an articulated failure to remember regarding the subject matter of whereabouts is not the same as total silence or a refusal to answer specific questions").

¶ 18. We conclude there was no error, and therefore there was no plain error. Haskins, 2016 VT 79, ¶ 41.

Affirmed.

FOR THE COURT:

_____

Chief Justice

9