In Re:  Herman L. Yoh, No. 758-01 Cncv  (Norton, J., Jan. 31, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
Chittenden County, ss.:

IN RE HERMAN L. YOH

ENTRY

This matter concerns a petition for post-conviction relief. The petitioner, Herman Yoh, was convicted of first-degree murder and sentenced to life imprisonment without possibility of parole. He now claims that he was denied effective assistance of counsel. The State has filed a motion for summary judgment. The court grants the State's motion.

A central issue in this petition is whether Yoh's counsel should have moved the trial court to suppress incriminating statements that Yoh made during a police interrogation. Yoh's other claims of ineffective assistance are: (1) his counsel's failure to request the proper jury charge regarding the voluntariness of his confession, (2) his counsel's failure to explore a diminished capacity defense with him, (3) his counsel's "inherently ineffective" defense, (4) his counsel's failure to argue adequately for a manslaughter instruction in the jury charge and to properly preserve this issue for appeal, and (5) his counsel's failure to present humanizing evidence during the sentencing phase of the trial.

Summary judgment is appropriate where there is no genuine issue as to any material fact and any party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3). A party opposing summary judgment is entitled to the benefit of all reasonable doubts and inferences, but the party must support allegations to the contrary with specific facts sufficient to create a genuine issue of material fact. Samplid Enters., Inc. v. First Vt.

Bank, 165 Vt. 22, 25 (1996). Here, the facts are partly disputed, so the court examines them in a light most favorable to Yoh as the non-movant. The court makes the following findings for the purposes of summary judgment.

Yoh was found guilty in October 1999 of murdering his wife, Miriam "Mary" Yoh. In April 2000, the court sentenced him to life imprisonment without possibility of parole. Attorney Jerry Schwarz represented Yoh throughout both the guilt and sentencing phases of the trial.

Part of the State's evidence against Yoh included incriminating statements that he made to Vermont police when they interrogated him in Pennsylvania on March 20, 1998. Vermont detectives interviewed Yoh twice that day, and he made incriminating statements during the second interview.

About nine and one-half minutes prior to the end of the first interview on March 20, Yoh made two comments that he now claims were requests to end the interview. First, after Det. Dane Shortsleeve stated, "We're not trying to trip you up," Yoh stated, "(inaud) it all stops here."[1] A few lines later, Det. Thomas Nelson asked, "You want to stop talking to us now?" and Yoh stated, "Yeah."

Yoh also made a statement that he now claims was a request for counsel. Shortly after Yoh stated, "(inaud) it all stops here," he stated, "You're trying to trip me up, you get an attorney in here or something."[2]

---

[1]Upon review of the audio recording, the "(inaud)" portion of Yoh's statement was likely, "That thing," referring to the detectives tripping him up. In other words, the statement was something to the effect "That thing all stops here." Therefore, this statement was not likely a request to end the interview.

[2] Upon hearing the audio recording and the inflections in Yoh's voice, the court notes that Yoh made the statement "you get an attorney in here or something" in reference to the prior clause, "You're trying to trip me up." Thus, the sentence should actually be read: "[If] you're trying to trip me up, you get an attorney in here or something." Det. Shortsleeve said repeatedly that he was not trying to trip Yoh up, and, in any event, the court does not fully understand what Yoh meant by stating that the detectives were trying to trip him up. The court doubts that the detectives understood it either. In that case, Yoh's request for counsel was not unambiguous and unequivocal.

After Yoh responded to Det. Nelson's question regarding whether he wanted to end the interview, the conversation proceeded as follows:

> Shortsleeve: Why?
>
> Yoh: Because.
>
> Shortsleeve: Because we know too much?
>
> Yoh: No.
>
> Shortsleeve: Cause we don't know anything? You know our investigation doesn't stop with you Herman. We've been working on it a long time and you realize that now with the stuff, the information we've given you. You know we're telling the truth.

---

For supportive caselaw on conditional requests for counsel, see Vail v. State, 536 N.E.2d 302, 303 (Ind. App. Ct. 1989) (holding that suspect's statement "[i]f I have to do [go to court on these charges], I'm going to have to get Langston for my lawyer again" was not invocation of right to counsel when suspect made statement between police interviews); State v. Campbell, 367 N.W.2d 454, 459 (Minn. 1985) (holding that suspect's statement "if I'm going to be charged with murder maybe I should talk to an attorney" was not invocation of right to counsel where suspect later reinitiated interview with police).

Yoh: I don't know what you're talking about.

Shortsleeve: Like I said we could probably come down the road later, they're going to be talking about different degrees of murder on.

Yoh: You're (inaud) I had nothing to do with it.

Shortsleeve: The case is sealed. We have an arrest warrant for you for murder in the first degree so the case has gone before a judge. The judge signs the arrest warrant, that's why we're down here. You know we have a good case. But I want to be able to take something back to them and say "yeah, he knows, he knows the score but this is accidental. This was something that he didn't plan on doing." People might see the way she acted as having a lot to do with it.

Nelson: That's an arrest warrant for you Herman, first degree murder, State of Vermont.

Shortsleeve: Bail is half a million dollars. You know this is a good case there. You need to decide if this can be knocked down to manslaughter, something with minor or lesser degree. We're not going to interview you after today. This is the last time. You tell us she pushed you into something and it was accidental we're going to have it on tape here. Otherwise it's going to look like it's premeditated, that you planned to do this, you're, you're not upset about it, she got what she deserved.

Yoh: I don't know what you're talking about.

Shortsleeve: You know what I'm talking about. You keep saying that but you know. If you decide later when you go back to your cell that there is a difference, and you'll talk to people, they're going to tell you that you gotta show some remorse, you gotta show that it was not intentional and this is the only chance you get with us. . . .

The conversation continued in this vein until the detectives ceased the interrogation several minutes later. Det. Shortsleeve continued to push Yoh to make a confession, saying that it was his last chance to talk with them and tell them it was an accident, that "[t]he train's leaving the station," that Yoh was "on a boat that's going down," and that he had to decide whether he was going to get out of jail before the age of 90.

Throughout the interview, Yoh voiced his concerns that the police had involved his family in Pennsylvania in their investigation. Detective Shortsleeve stated toward the end of the interview: "You know we're talking to your family, you want to leave them with any good feelings, let us be able to tell them that this was an accidental thing. Tell us what happened in the room that night."

Detectives Shortsleeve and Nelson also told Yoh about a great deal of evidence that indicated that Yoh had committed the crime. In particular, the detectives told Yoh about fingerprints off of Mary's dead body, a stain of Mary's blood on the wall of the hotel room she was in with Yoh on the night of the murder, DNA evidence, and witnesses who had seen Yoh's vehicle in an area near the location of the body. In reality, the State did not have any of this evidence.

The detectives also led Yoh to believe that they were still looking for Mary at the beginning of the interview. The detectives stated that they were looking for information for Mary's sisters so that they could find her. They led Yoh to believe that they were treating the case as a missing person investigation. About two hours into the interview, the detectives told Yoh that Mary's body had in fact been located and that she had been killed.

About 30 to 40 minutes after the detectives ended the first interview on March 20, a Pennsylvania officer informed them that Yoh wished to return to make further statements. Yoh had told the officer, who was transporting him to court for an arraignment, that if the officer could keep the detectives off his family, he would "tell them everything they want to know." The officer then returned Yoh to the police barracks. Det. Nelson read Yoh his Miranda rights, and Yoh signed a waiver of these rights. Yoh then made a number of incriminating statements that were used against him at trial.

Attorney Schwarz did not file a motion to suppress any of Yoh's statements to the detectives.

At the time of the interview, Yoh was 42 years old. The parties have not submitted evidence regarding Yoh's mental aptitude or education. Yoh's counsel describes him as a drifter who did odd jobs and changed residences frequently. He had served time in prison

for other offenses in the past. His prior crimes include aggravated assault, domestic assault, and other misdemeanor convictions.

The trial court's jury charge included an instruction that the jury must find Yoh's statements to the detectives voluntary, but it did not instruct the jury that it must find voluntariness beyond a reasonable doubt. The trial court instructed the jury to consider whether Yoh gave his confession freely and voluntarily, without fear, threats, coercion, or force, considering all the circumstances. The trial court also instructed that the jury should give the alleged statements such weight as it felt the statements deserved under all the circumstances. Attorney Schwarz did not request any different kind of instruction on voluntariness.

Aside from Yoh's incriminating statements, the State also presented evidence that other witnesses had heard a fight from Yoh's motel room on the night of the murder, a statement that Yoh made on the evening of the murder that Mary was "history in three days," evidence regarding Yoh's prior abuse of Mary, and medical evidence regarding the cause of death. The jury also heard evidence that the morning after Mary's death, Yoh called her employer to report that she would be absent due to an illness. Yoh then left for Pennsylvania.

The jury also heard testimony from Yoh, who offered a description of what had happened the evening of the murder. Yoh testified at trial that two unknown men entered his and Mary's motel room on the night of the murder, argued with Mary, and knocked him unconscious. When he came to, his wife was dead and the two strangers threatened him to keep quiet while they took her body out of the motel. Yoh followed them to see where they would dump the body, but he lost track when his vehicle got stuck in the snow. Yoh recognized one of the two strangers as someone who had worked for Yoh's former employer, Shelley Palmer. Yoh and Mary had had a falling out with Mr. Palmer and had filed a criminal complaint with the police for trespass against him. Yoh believed that Mr. Palmer had arranged for the two men to come to his motel room and interrogate Mary, and this interrogation ultimately led to her death.

Before trial, Attorney Schwarz had urged Yoh on several occasions to pursue and accept a plea bargain. Yoh consistently maintained that he did not murder Mary. Yoh told Attorney Schwarz that the State's plea offers—between 25 to 30 years to life in prison— were not sufficient and that he might as well take a shot at trial. Yoh's explanation of

what occurred the night of the murder indicated that Yoh wished to present an "all or nothing" defense, meaning Yoh wished for a full exoneration rather than a plea bargain or a conviction of a lesser-included offense. Yoh also stated that he was not intoxicated that evening, even though there was evidence that he may have been.

During the charge conference, Attorney Schwarz requested that the court include an instruction that the jury consider the lesser-included offense of manslaughter. Attorney Schwarz did not argue that the court must include the manslaughter instruction because it had allowed evidence of Yoh's prior abuse of Mary. The court denied Attorney Schwarz's request. Attorney Schwarz then failed to preserve this issue for appeal when, after the court read the instructions to the jury, he merely stated that his objections were those he had previously noted to the court.

The court begins with Yoh's claim of ineffective assistance with regard to Attorney Schwarz's failure to file a motion to suppress Yoh's statements to the detectives. In order to succeed with his ineffective assistance of counsel claims, Yoh must meet the two-part test set out in Strickland v. Washington, 466 U.S. 668 (1984). First, he must show that Attorney Schwarz's performance fell below an objective standard of attorney performance informed by prevailing professional norms. Second, Yoh must show that there is a reasonable probability that, but for Attorney Schwarz's unprofessional errors, the proceedings would have resulted in a different outcome. In re Grega, 175 Vt. 631, 632–33 (2003) (mem.). With respect to the second "prejudice" part, a "'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" In re Miller, 168 Vt. 583, 584 (1998) (mem.) (quoting Strickland, 466 U.S. at 694 (1984)).

As an initial matter, Yoh's claim regarding Attorney Schwarz's failure to file a suppression motion concerns Miranda and Yoh's rights against self-incrimination under the Fifth Amendment, U.S. Const. amend. V, and Chapter I, Article 10 of the Vermont Constitution. This court must consider the state of the law at the time of Yoh's trial in

7

1999. The court cannot require defense counsel to predict unexpected developments in Miranda post-trial.[3]

The State argues that the lack of a motion to suppress did not prejudice Yoh because a motion would not have succeeded. Because Yoh waived his rights at the beginning of the second interview on March 20, the State argues, he could not claim that the authorities obtained incriminating statements in violation of Miranda. Furthermore, the State claims that Yoh's incriminating statements were voluntary.

Yoh argues that Attorney Schwarz would have succeeded with a suppression motion, and his incriminating statements were a fundamental part of the State's case against him. Therefore, without his statements in evidence, there is a reasonable probability that the proceedings would have had a different outcome. Yoh offers three reasons why the trial court would have suppressed his statements: (1) the authorities did not honor his request to remain silent during the first interview on March 20, (2) the authorities did not respect his request for counsel during the same interview, and (3) regardless of the Miranda violations, his statements were not voluntary.

According to the procedures outlined in Miranda and its progeny, once a suspect invokes the right to remain silent, questioning must cease. Miranda v. Arizona, 384 U.S. 436, 473–74 (1966); State v. Mosher, 143 Vt. 197, 203–04 (1983). A request to remain silent need not be artful, as long as it clearly indicates that the suspect wishes to end the interview. Mosher, 143 Vt. at 203. A suspect's request to remain silent must be "'scrupulously honored,'" meaning that authorities must immediately respect the suspect's wishes to remain silent and can reinitiate questioning after a reasonable period of time and only about a separate matter. Michigan v. Mosley, 423 U.S. 96, 104–05 (1975) (quoting Miranda, 384 U.S. at 479).

_____

[3] Since Yoh's conviction, some decisions on Miranda issues have been revised. See, e.g., Missouri v. Seibert, 124 S. Ct. 2601, 2610–11 (2004) (holding that deliberate approach of questioning suspect first without warning, issuing warning and having suspect repeat incriminating statements violates Miranda); Dickerson v. United States, 530 U.S. 428, 438–40 (2000) (holding that Miranda is "constitutionally based" and Congress could not supercede Miranda with totality-of-the-circumstances approach).

8

Here, there is no question that Yoh's affirmative answer to Detective Nelson's question of whether he would like to end the interview was a clear and unequivocal statement that he wished to end the interview. The questioning that continued after this statement was a <u>Miranda</u> violation. Thus, there is a reasonable probability that a trial court would have suppressed any incriminating statements that Yoh made after his request to end the interview until the end of the interview.

Yoh, however, did not make incriminating statements until the second interview on March 20, after he reinitiated contact with the detectives and after he was advised of—and waived—his <u>Miranda</u> rights. A prior violation of <u>Miranda</u> does not taint a subsequent interview, as long as the authorities follow the proper <u>Miranda</u> procedures for the subsequent interview. <u>Oregon v. Elstad</u>, 470 U.S. 298, 314 (1985).[4] Therefore, Attorney Schwarz would not have been successful in suppressing Yoh's confession based on the detective's prior violation of <u>Miranda</u>.

The <u>Elstad</u> rule also applies with respect to Yoh's possible request for counsel. Under <u>Miranda</u>, a request for counsel must be honored if the request is unambiguous and unequivocal. <u>State v. Bacon</u>, 163 Vt. 279, 295 (1995). Whether or not Yoh's statement, "You're trying to trip me up, you get an attorney in here or something," was an

---

[4]The court acknowledges that the Supreme Court's recent holding in <u>Seibert</u> may have modified <u>Elstad</u>. See 124 S. Ct. at 2619 (O'Connor, J., dissenting). Attorney Schwarz could not, however, have reasonably predicted the <u>Seibert</u> ruling during the time of Yoh's trial in 1999. Therefore, the court does not consider <u>Seibert</u> as controlling.

unambiguous and unequivocal invocation of the right to counsel,[5] the detectives cured any violation of <u>Miranda</u> by later re-issuing the warnings and securing a waiver after Yoh re-initiated the second interview.

Nevertheless, <u>Elstad</u> still requires consideration of the overall voluntariness of incriminating statements made after statements that authorities secured in violation of <u>Miranda</u>.

> As in any such inquiry, the finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements. The fact that a suspect chooses to speak after being informed of his rights is, of course, highly probative.

<u>Elstad</u>, 470 U.S. at 318. Therefore, police conduct both before and after Yoh invoked his rights during the first interview is relevant in assessing the overall voluntariness of Yoh's statement, despite the detectives' ultimate compliance with <u>Miranda</u> in the second interview.

Courts determine whether a defendant's statement to police was voluntary by examining the totality of the circumstances. The Vermont Supreme Court has held that police may use some psychological tactics to elicit incriminating statements, as long as a defendant makes the statements while freely balancing the competing considerations. Psychological tactics may render a statement involuntary if they "'were so manipulative or coercive that they deprived [defendant] of his ability to make an unconstrained, autonomous decision to confess.'" <u>State v. Bacon</u>, 163 Vt. 279, 294 (1995) (quoting <u>Miller v. Fenton</u>, 796 F.2d 598, 604 (3d Cir. 1986)). Courts apply a preponderance of the evidence standard in assessing voluntariness. <u>State v. Caron</u>, 155 Vt. 492, 504 (1990).

---

[5]As the court's analysis above shows, Yoh's statement was most likely not an unambiguous and unequivocal request for counsel. See <u>supra</u> note 2.

Factors that are probative of voluntariness include the degree of police coercion; the length of the interrogation; its location; its continuity; and the defendant's age, education, intelligence, physical and mental condition, and reading ability. Withrow v. Williams, 507 U.S. 680, 693 (1993); State v. Keith, 160 Vt. 257, 262 (1993). The Vermont Supreme Court has held that express or implied promises by police investigators to a suspect may be enough to overcome the suspect's freewill, but mere predictions about the outcome of a suspect's case or facts about a suspect's predicament are not enough to render statements involuntary. State v. Roberts, 160 Vt. 385, 388–90 (1993). Threats that a suspect may be fired from a job may render a statement involuntary, e.g., State v. Welch, 160 Vt. 70, 86 (1992), but stating an intent to charge friends or relatives with a crime based on evidence gathered unless a suspect comes clean will not render a statement involuntary, e.g., State v. Zehner, 142 Vt. 251, 254 (1982).

The detectives' coercive approach after Yoh invoked his right to silence may have particular bearing on the voluntariness of Yoh's later statements. The detectives' disregard for Yoh's request to end the interview could have signaled to Yoh that his constitutional rights were of no consequence, thereby overcoming his free will. See Collazo v. Estelle, 940 F.2d 411, 417 (9th Cir. 1991) (en banc) (discussing effect of officer's disregard for defendant's invocation of right to counsel on voluntariness of defendant's statement). An examination of the detectives' coercive approach following Yoh's invocation of his rights demonstrates a targeted attempt to force Yoh to reconsider his request to remain silent. The detectives' line of questioning excerpted above, after Yoh expressly stated that he wanted to end the interview, may have affected the voluntariness of Yoh's statements shortly thereafter.

But the court must consider other factors, as well. Yoh was a mature adult—42 years old—at the time of the interview. Although Yoh's counsel described him as a drifter whose speech was not that of a well-educated person, Yoh has not supplied any specific facts to demonstrate a mental disability or lack of education that would have rendered him susceptible to police interrogation. Moreover, although his prior experience with law enforcement may not have made him impenetrable to police coercion, it suggests he was more savvy than an average suspect.

The court must also consider the "highly probative" fact that Yoh reinitiated the interview and waived his Miranda rights after the detectives informed him of those rights.

11

See Elstad, 470 U.S. at 318. If Yoh's will were overborne by the detectives' coercive approach, the re-reading of Miranda at the beginning of his second interview that day would have given him pause to consider whether to proceed with incriminating statements.

Yoh argues that the detectives' threat to draw his family into the police investigation supports a finding that his statements were involuntary. But Det. Shortsleeve merely stated that the police would continue their investigation by talking to Yoh's family, which was a reasonable course of conduct for any homicide investigation. The fact that Yoh may have been sensitive about officers questioning his family does not suggest that his will was overcome by truthful statements about police investigation practices. Moreover, truthful statements about the effect of a police investigation on a suspect's family and friends are not enough to render the suspect's statements involuntary. See, e.g., Zehner, 142 Vt. at 254.

Finally, the detectives sprung several psychological traps in an attempt to obtain a confession, including the exaggerated and fabricated evidence against Yoh, the manner in which they led Yoh to believe that they were still looking for Mary, and the suggestion that a showing of remorse would reduce his criminal liability from first-degree murder to manslaughter. Courts have, however, allowed leeway for the police to use such tactics as long as the suspect's will is not overborne and the suspect makes the statement while freely balancing the considerations. The detectives did not promise Yoh a reduced charge; they merely predicted how a confession might affect the outcome of his trial. Their tactics were within bounds permitted by Vermont and federal courts. See, e.g., Bacon, 163 Vt. at 293–94.

Considering the totality of the circumstances, the court concludes that a suppression motion did not have a reasonable probability of success. The State would have shown that Yoh's statements were voluntary by a preponderance of the evidence, and Yoh's statements still would have come into evidence at trial. Therefore, Attorney Schwarz's failure to file the motion was not prejudicial to the outcome of Yoh's trial, and Yoh cannot succeed with an ineffective assistance of counsel claim on this ground. Summary judgment is granted with respect to this claim.

Yoh's next claim is that Attorney Schwarz failed to request the correct charge regarding voluntariness. Yoh argues that Attorney Schwarz should have requested that

12

the jury apply a two-step approach. First, the jury must determine whether the statements were voluntary beyond a reasonable doubt. Second, if the jury finds that the statements were voluntary, then it may give the statements whatever weight they deserve under the circumstances. If, however, the jury finds that the statements were not voluntary, it must disregard them entirely. Yoh argues that Attorney Schwarz's failure to request this instruction was ineffective assistance. In particular, Yoh argues that the improper instruction resulted in the jury's failure to apply the appropriate "beyond a reasonable doubt" standard of proof.

Vermont follows the "'Massachusetts Rule' whereby voluntariness is first considered by the court in determining the admissibility of a confession and then is reconsidered by the jury on whether to rely on the confession." State v. Caron, 155 Vt. 492, 503 (1990). Although a trial court applies a preponderance of the evidence standard in assessing voluntariness, a jury must find voluntariness beyond a reasonable doubt. Id. at 503–04. Therefore, even though there is no reasonable probability that the trial court would have found Yoh's statements involuntary, as the court held above, there may be a reasonable probability that the jury would not have found the statements voluntary beyond a reasonable doubt.

The Vermont Supreme Court has cautioned against defining the reasonable doubt standard, holding that the term essentially defines itself. State v. McMahon, 158 Vt. 640, 641 (1992). For the purposes of applying this standard in order to assess how a jury would have reacted to a proper charge in this case, however, this court believes that the standard requires a careful examination of all the evidence and a determination of whether any facts or circumstances provide any reason to believe that Yoh's statements were involuntary.

Looking at all the facts and circumstances surrounding the police interrogation of Yoh, there may be a reasonable probability that the jury would not have found Yoh's incriminating statements voluntary beyond a reasonable doubt, especially considering the highly coercive interrogation after Yoh requested to terminate the interview. Therefore, a proper charge may have triggered a different finding on voluntariness. But considering the record as whole, there is no reasonable probability that such a finding would have affected the outcome of Yoh's trial. Even if the jury had embarked on the mental exercise

13

of ignoring Yoh's incriminating statements, it would still have other State's evidence to weighing in favor of a conviction.

Moreover, the jury would have been left with Yoh's explanation of events that evening which was, at best, highly unusual and difficult to believe. Yoh's rendition included two strangers who knocked him out and then probably killed Mary while he was unconscious. Then, after they threatened him when he regained consciousness, Yoh decided to follow them to determine where they were going to dump Mary's body. The following day, despite the recent murder of his wife by strangers, Yoh left for Pennsylvania and did not contact authorities. Yoh relayed none of this information to the detectives during his interrogation. It is highly unlikely that any juror would have found this rendition credible, and even if the jury completely disregarded Yoh's statements to the detective, it still would have had enough evidence to convict Yoh. Thus, Attorney Schwarz's failure to request a proper charge did not prejudice Yoh's trial.

Yoh next claims that because Attorney Schwarz failed to explain the diminished capacity defense to him, Yoh decided to present an "all or nothing" defense, rather than plead to a lesser charge or present a diminished capacity defense in hopes of obtaining a manslaughter conviction instead of a first-degree murder conviction. The State argues that because Yoh was adamantly for an "all or nothing" defense, Attorney Schwarz reasonably believed that Yoh did not wish to pursue a lesser-included offense.

The court agrees with the State. Given Yoh's consistent story that he was not intoxicated and that he wished for a complete exoneration, Attorney Schwarz was reasonable in not pursuing a diminished capacity defense with Yoh. A criminal defense attorney's assistance to a defendant must merely fall within a "wide range of reasonable professional assistance," and courts must engage in a "strong presumption that counsel's conduct" falls within this range of reasonable assistance. Strickland, 466 U.S. at 689; see also In re Dunbar, 162 Vt. 209, 212 (1994) (describing standard by which defense counsel performance is reviewed in ineffective assistance claims and citing Strickland). Attorney Schwarz's performance with regard to the diminished capacity defense fell within this range of reasonable professional assistance.

Next, Yoh argues that Attorney Schwarz's use of Yoh's explanation of the events that occurred on the evening of the murder, which Attorney Schwarz urged the jury to accept in his closing argument, was inherently ineffective, because the explanation was

14

factually inconsistent with Yoh's statements to police. Prevailing norms of professional conduct for defense counsel require that counsel abide by certain decisions of the accused in a criminal trial, including the decision of whether to testify on the accused's own behalf. In re Trombly, 160 Vt. 215, 218 (1993) (citing American Bar Association Standards for Criminal Justice, The Defense Function § 4–5.2(a)). Thus, Yoh's decision to testify and offer his explanation of events that evening was his to make, and he has not provided any evidence to suggest that Attorney Schwarz did not advise him appropriately in making this decision. Attorney Schwarz's use of Yoh's testimony in his closing argument was therefore reasonable.

Yoh next claims ineffective assistance because Attorney Schwarz failed to provide an appropriate argument to the trial court regarding Yoh's entitlement to a manslaughter instruction and failed to renew and preserve his objection to the court's decision not to offer a manslaughter instruction. The State argues that a manslaughter instruction would not have affected the outcome of the trial.

The court agrees with the State. Although Yoh may have been entitled to a manslaughter instruction, see State v. Delisle, 162 Vt. 293, 301 (1994), the State's evidence and Yoh's weak explanation of what transpired overwhelmingly supported a murder conviction. Although the jury could have ignored the State's evidence of Yoh's motive, which included Yoh's prior abuse of Mary, there is no reasonable probability that the jury would have done so given the weight of the State's evidence. Therefore, there is no reasonable probability that the jury would have opted for a manslaughter conviction. Furthermore, Yoh presented an all-or-nothing defense that was inconsistent with a request for a lesser-included offense finding by the jury. There is no reason to believe the jury would have delivered a manslaughter verdict if neither Yoh nor the State had argued for one.

Finally, the court turns to Yoh's claim that Attorney Schwarz was ineffective because he failed to present "humanizing evidence" at Yoh's sentencing. The State argues that Yoh has the burden of showing what humanizing evidence Attorney Schwarz could have presented and, having not provided any such evidence, Yoh has failed to demonstrate ineffective assistance. The court agrees. Although Yoh, as the non-movant, is entitled to the benefit of all reasonable doubts and inferences in this summary judgment ruling, see Samplid Enters., Inc. v. First Vt. Bank, 165 Vt. 22, 25 (1996), Yoh has

15

presented no evidence whatsoever regarding witnesses who could have testified on his behalf at sentencing. Without evidence, his argument that there must have been someone to testify as to his positive characteristics is mere speculation does not warrant an inference that such a witness would have come forward.

## ORDER

For the foregoing reasons, summary judgment is GRANTED.

Dated at Burlington, Vermont, January 31, 2005.

_____/s/_____
Richard W. Norton     Judge

16